IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALLSTATE INSURANCE COMPANY,

        Plaintiff,                        No. CIV S-08-3068 GEB EFB

        v.

ANTONIO ARELLANO,                  ORDER

        Defendant.

_____/

       Pending for decision before this court are: (1) third party Blanca Lopez's motion for a protective order and to quash a subpoena for documents issued by plaintiff Allstate Insurance Company ("Allstate") to U.C. Davis Medical Center, and for sanctions; (2) third party Blanca Lopez's motion to quash a subpoena for documents issued by Allstate to attorney Hank Greenblatt and his law firm (Dreyer, Babich, Buccola, Callaham & Wood), and for sanctions; and (3) Allstate's cross-motion to compel compliance with the subpoenas. Dckt. Nos. 10, 12, 21. The matters were heard on this court's law and motion calendar on September 2, 2009. Attorney Michael Barns appeared on behalf of Allstate; attorney Michael Jones appeared on behalf of defendant Antonio Arellano;[1]  and attorney Hank Greenblatt appeared on behalf of Blanca

_____

[1]  Defendant Arellano joins in both of Blanca Lopez's motions. Dckt. Nos. 19, 20.

1 Lopez.

2 I.     <u>BACKGROUND</u>

3          Allstate filed this action in December 2008, seeking reimbursement from defendant, its

4 insured, for a settlement payment it made to third party Blanca Lopez.  Compl., Dckt. No. 2.

5 According to Allstate's complaint, Jose Lopez and his wife, Blanca, went to defendant's home

6 on June 10, 2008 for some type of chiropractic treatment, and during the course of the treatment,

7 Mr. Lopez suffered a tear in, and bleeding from, his left vertebral artery, causing loss of feeling

8 in his extremities, loss of vision, and breathing difficulty.  *Id.* ¶¶ 6, 7.  Mr. Lopez became

9 unconscious, and was taken to the University of California Davis Medical Center, where he was

10 placed on life support and subsequently died on June 12, 2008.  *Id.* ¶ 8.

11         According to the complaint, Mrs. Lopez, through her attorney Hank Greenblatt, notified

12 defendant that she witnessed her husband's death and that she held defendant responsible for the

13 couple's injuries.  *Id.* ¶ 9.  On October 7, 2008, Mrs. Lopez, through her counsel, demanded that

14 Allstate tender the applicable liability coverage limit of defendant's homeowner's insurance

15 policy to settle her claim.  *Id.* ¶ 10.  Allstate accepted the settlement demand and, on or about

16 December 1, 2008, paid Mrs. Lopez $300,000 to settle her claim.  *Id.* ¶ 13.  Allstate contends

17 that it believed defendant's chiropractic services were excluded from its coverage as business

18 and professional activities, but paid the demand under a reservation of rights to cap defendant's

19 liability, and then brought this action for declaratory relief and reimbursement.  Dckt. 21 at 4.

20         On May 7, 2009, Allstate's counsel Norman Lau spoke with Mr. Greenblatt over the

21 telephone to schedule a deposition of Blanca Lopez and to discuss serving her with a subpoena.

22 Lau Decl., Dckt. No. 22, ¶ 2.  According to Mr. Lau, Mr. Greenblatt responded that Mrs. Lopez

23 had moved to Mexico and it would be extremely difficult to contact her.  *Id.*

24         On June 1, 2009, Mr. Lau issued subpoenas to Mr. Greenblatt and his law firm (the

25 "Greenblatt/Dreyer Babich subpoena"), and to U.C. Davis Medical Center (the "U.C. Davis

26 subpoena"), requesting the production of various documents on June 11, 2009.  *Id.* ¶ 3.  That

same day, Mr. Greenblatt received notice of the Greenblatt/Dreyer Babich subpoena, and

attempted to contact Mr. Lau to object to the subpoena.  Greenblatt Decl. in Supp. of Mot. to

Quash Greenblatt/Dreyer Babich Subpoena, Dckt. No. 13, ¶ 6.  Then, on June 8, 2009, Mr.

Greenblatt sent a letter to Mr. Lau and a formal objection to the subpoena.  *Id.,* ¶ 6, Ex. F.  On

July 10, 2009, Mr. Lau sent a letter to Mr. Greenblatt, indicating that the objections to the

subpoena were without merit and demanding production by July 17, 2009.  *Id.*, ¶ 6, Ex. G.  That

same day, Mr. Greenblatt sent another letter to Mr. Lau, again objecting to the subpoena and

requesting a phone call from Mr. Lau.  *Id.*, ¶ 6, Ex. H.

On July 13, 2009, Mr. Greenblatt received notice of the U.C. Davis subpoena.  Greenblatt

Decl. in Supp. of Mot. to Quash U.C. Davis Subpoena, Dckt. No. 11, ¶ 6.  That same day, Mr.

Greenblatt sent a letter to Mr. Lau, objecting to the subpoena as overbroad and violative of Mr.

Lopez's privacy rights.  *Id.*  On July 14, 2009, Mr. Lau sent a letter to Mr. Greenblatt, clarifying

that Allstate only sought documents relating to the underlying claim made by Mrs. Lopez.  Lau

Decl. ¶ 6.

On July 20, 2009, Mr. Greenblatt, on behalf of Mrs. Lopez, filed a motion for a

protective order and to quash the U.C. Davis subpoena, and for sanctions, and a motion to quash

the Greenblatt/Dreyer Babich subpoena, and for sanctions.  On August 19, 2009, Allstate filed an

opposition to the motions and a cross-motion to compel compliance with the subpoenas.  After

receiving Allstate's opposition to the motion to quash, Mr. Greenblatt contacted Mr. Lau, as well

as Allstate's lead counsel, Michael Barnes, to meet and confer further regarding the motions.

The attorneys had multiple phone conversations but could not resolve the disputes.  *See* Dckt.

Nos. 27, 28.

////

////

////

////

II.   <u>DISCUSSION</u>

    A.   <u>Allstate's Subpoena to U.C. Davis Medical Center</u>

       Blanca Lopez moves for a protective order and to quash the U.C. Davis subpoena, which seeks:

> Any and all medical records, notes and charts, files, admission reports, discharge reports, diagrams, diagnoses, patient reports, evaluations, tests and laboratory results, X-rays, photographs, ultrasounds, summaries, records of visits, records of treatment, handwritten notes, billing records, records of payment, records of insurance, correspondence, and any other information pertaining to the medical condition and/or treatment of JOSE LOPEZ (DOB 4/29/1944).

Lau Decl., Ex. A.  In its "definitions" section, the subpoena defines JOSE LOPEZ as the Jose Lopez "who was admitted to the U.C. Davis Medical Center on June 10, 2008 for emergency medical treatment and whose date of death was June 12, 2008." *Id.*

       Mrs. Lopez contends that (1) the subpoena is overbroad and violates her and her deceased husband's right to privacy, since the time limitation on the subpoena is only in the definitions section and not in the actual document request; and (2) the subpoena exceeds the scope of Federal Rule of Civil Procedure 26, since Allstate already has the applicable death certificate, coroner's report and autopsy findings, and it is unclear what other documents from U.C. Davis could be reasonably calculated to lead to the discovery of admissible evidence.[2] Dckt. No. 10. Mrs. Lopez also seeks sanctions and attorney fees (in the amount of $1250.00)[3] for having to file this motion to quash.

---

[2] Mrs. Lopez also contends that the subpoena was defective since the notice to consumer (as required by California Civil Procedure Code sections 1985.3 and 1985.6) is addressed to the "Estate of Antonio Arellano," and not to the estate of Jose Lopez, or to his heir.  Dckt. No. 10 at 5.  However, Allstate re-served the subpoena on U.C. Davis on July 9, 2009, extending production to July 27, 2009, and attaching a notice to consumer to Mrs. Lopez.  Dckt. Nos. 21 at 7; 22 at 13.

[3] Mrs. Lopez also seeks attorney fees in the amount of $1250.00 for the improper Greenlatt/Dreyer Babich subpoena, and an additional $1500.00 for reviewing and responding to Allstate's opposition to both motions.  Dckt. Nos. 11, 13, 27.

1    Allstate opposes the motion and seeks an order compelling compliance with the

2    subpoena, arguing (1) that the documents it seeks from U.C. Davis are relevant; (2) that the

3    subpoena is not vague or overbroad since it is limited by the definition of "Jose Lopez"; (3) that

4    the right to privacy is not implicated by the subpoena; and (4) that Mrs. Lopez has not met her

5    burden of showing "good cause" for a protective order.  Dckt. No. 21

6        As set forth in Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery

7    regarding any non-privileged matter that is relevant to any party's claim or defense. . . . Relevant

8    information need not be admissible at the trial if the discovery appears reasonably calculated to

9    lead to the discovery of admissible evidence."  Relevancy at this stage of an action has been

10   construed broadly to "encompass any matter that bears on, or that reasonably could lead to other

11   matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v.*

12   *Sanders*, 437 U.S. 340, 351 (1978) (*citing Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

13       Federal Rule of Civil Procedure 45 governs subpoenas.  In relevant part, Rule

14   45(c)(3)(A) provides that an issuing court must quash or modify a subpoena if the subpoena

15   "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

16   . . . subjects a person to undue burden."  Rule 45 further provides that, "[a]t any time, on notice

17   to the commanded person, the serving party may move the issuing court for an order compelling

18   production or inspection."  Fed. R. Civ. P. 45(c)(2)(B)(I).

19       Additionally, Rule 26(c)(1) permits a party or any person from whom discovery is sought

20   to move for a protective order.  Fed. R. Civ. P. 26(c)(1).  Specifically, "[t]he court may, for good

21   cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or

22   undue burden or expense[.]"  *Id.*

23       Here, Allstate has made clear that the U.C. Davis subpoena is only intended to seek

24   records pertaining to the incident surrounding Mr. Lopez's death.  Those documents, including

25   the requested billing records as discussed at the September 2, 2009 hearing, are relevant in this

26   action because they could contain information regarding the cause of Mr. Lopez's death and the

effect of defendant's purported chiropractic treatment on Mr. Lopez.

Additionally, although California law recognizes a constitutional right to privacy in an individual's medical history,[4] the documents would not impose a significant privacy intrusion for Mr. or Mrs. Lopez.  As an initial point, because the documents do not seek information regarding Mrs. Lopez or any medical conditions she may have, her privacy rights are not implicated, and Mr. Lopez's privacy rights have diminished because of his death and the passage of time.  *Marsh v. County of San Diego*, 2007 WL 3023478, at *2-3 (S.D. Cal. Oct. 15, 2007) ("[A]n individual's privacy rights with regard to medical records is diminished after death."); *see also Powell v. United States*, 584 F. Supp. 1508, 1526 (N.D. Cal. 1984) (privacy interests are less compelling with the passage of time and with the death of the holder of the interest).  Moreover, Allstate only seeks information regarding the physical conditions that resulted in Mr. Lopez's death — facts which Mrs. Lopez put at issue when she made a wrongful death claim.  By putting those facts at issue in her wrongful death claim, she likely waived any right to privacy and patient-litigant privilege she held with regard to those specific facts.  *See Britt v. Superior Ct.*, 20 Cal.3d 844, 859-62 (1978) ("plaintiffs are 'not obligated to sacrifice all privacy to seek redress for a specific [physical,] mental or emotional injury'; while they may not withhold information which relates to any physical or mental condition which they have put in issue by bringing [ ] suit, they are entitled to retain the confidentiality of all unrelated medical or psychotherapeutic treatment they may have undergone in the past"); *see also Anderson v. Abercrombie and Fitch Stores, Inc*., 2007 WL 1994059, at *4 (S.D. Cal. July 2, 2007).

Additionally, although Mrs. Lopez asserts that Allstate should already possess all relevant information to proceed with its case, that assertion is speculative since Mrs. Lopez does not know what information Allstate has or does not have in its possession.  According to

---

    [4] Because this is a diversity case, California's law of privilege applies. *See* Fed. R. Evid. 501; *Star Editorial, Inc. v. Dist. Court*, 7 F.3d 856, 859 (9th Cir. 1993) (analyzing qualified reporter's privilege under California law).

1    Allstate, it does not possess Mr. Lopez's medical records.  Dckt. 21 at 15.

2         Allstate makes clear that the subpoena only seeks documents relating to the specific

3    incident involving defendant and the emergency treatment Mr. Lopez received at U.C. Davis

4    Medical Center between June 10, 2008 and June 12, 2008.  However, the U.C. Davis subpoena,

5    as currently drafted, is unclear.  The subpoena requests any and all medical records, notes and

6    charts, files, etc., "and any other information pertaining to the medical condition and/or

7    treatment of JOSE LOPEZ (DOB 4/29/1944)."  Although the definitions section of the subpoena

8    defines "JOSE LOPEZ" as the Jose Lopez "who was admitted to the U.C. Davis Medical Center

9    on June 10, 2008 for emergency medical treatment and whose date of death was June 12, 2008,"

10   the subpoena could still be interpreted to require production of other medical information

11   regarding *that* Jose Lopez (such as pre-incident records).

12        In light of this potential confusion, and in light of Mr. Lau's representation in his most

13   recent declaration that he suggested to Mr. Greenblatt that they "write to U.C. Davis to clarify or

14   that Allstate prepare another subpoena with a more precise instruction limiting the records

15   sought [to the two days that Mr. Lopez was at U.C. Davis following the incident]," Mrs. Lopez's

16   motion to quash the U.C. Davis subpoena is granted in part, without prejudice to Allstate serving

17   a more precise subpoena on the U.C. Davis Medical Center that clearly limits the document

18   request to those documents relating to the incident and to Mr. Lopez's stay at U.C. Davis from

19   June 10 to June 12, 2008.

20        In light of this ruling, Allstate's request for an order to compel U.C. Davis to respond to

21   the subpoena is denied without prejudice to any future motion that may be filed to compel

22   compliance with a more precisely worded subpoena.  Further, because the documents Allstate

23   seeks are relevant, and the question of whether the subpoena is ambiguous is one on which

24   reasonable minds may differ, the court finds that Allstate's position was substantially justified

25   and an award of expenses to Mrs. Lopez is unwarranted.  Therefore, Mrs. Lopez's request for

26   sanctions with regard to this motion is denied.  *See* Fed. R. Civ. P. 37 (a)(5)(A) ("[T]he court

1  must not order [payment of expenses] if: . . . the opposing party's nondisclosure, response, or

2  objection was substantially justified; or . . . other circumstances make an award of expenses

3  unjust.").

4       B.  <u>Allstate's Subpoena to Hank Greenblatt and Dreyer Babich</u>

5       Blanca Lopez also moves to quash the Greenblatt/Dreyer Babich subpoena, which seeks:

6            All documents or communications relating to the INCIDENT[;]
             All documents or communications regarding BLANCA LOPEZ's
7            claims against Antonio Arellano or Allstate Insurance Company as
             a result of the INCIDENT[;] All documents or communications
8            regarding the settlement of BLANCA LOPEZ's claims against
             Antonio Arellano or Allstate Insurance Company as a result of the
9            INCIDENT[; and] Your files relating to BLANCA LOPEZ or the
             INCIDENT.
10

11  Lau Decl., Ex. A.  Mrs. Lopez contends that the subpoena violates the attorney client privilege

12  and the attorney work product doctrine and that there is no non-privileged information in the file

13  that would be reasonably calculated to lead to the discovery of admissible evidence and that is

14  not equally available to all parties.  Dckt. No. 12.  Mrs. Lopez also seeks sanctions and attorney

15  fees (in the amount of $1,250.00) for the improper subpoena.  *Id.* at 5.

16       Allstate opposes the motion and seeks an order compelling compliance with the

17  subpoena.  Allstate argues that the documents are relevant and not privileged or protected.  It

18  contend that because the subpoena specifically excludes documents protected by privilege, and

19  because no privilege log was provided, there is no privilege issue.  It further contends that work

20  product documents are discoverable here under Federal Rule of Civil Procedure 26 because they

21  are relevant and there is a substantial need for them, and there is no harm or prejudice posed by

22  producing them.  Allstate also argues Ms. Lopez's "alternative means" and other discovery

23  objections are baseless; and that the subpoena is not overbroad, burdensome or vague because

24  the subpoena is limited to the "incident." Dckt. No. 21.

25       Here, while it is unclear precisely what information is in the Greenblatt/Dreyer Babich

26  files, it appears that Mrs. Lopez was the only witness to the incident.  Moreover, it appears that

Allstate may not be able to depose Mrs. Lopez.  Thus, the types of documents sought by the subpoena regarding what Mrs. Lopez witnessed appear to be both relevant and necessary.  The subpoena is limited to the incident and seeks documents regarding Mr. Lopez's death and Mrs. Lopez's ensuing wrongful death claim.  According to Allstate, the responses sought are expected to reflect the communications among Mrs. Lopez and others relating to her late husband's injuries, any medical information in her possession, details of defendant's chiropractic practice, the nature of defendant's treatment of Mr. Lopez and other individuals, and whether defendant requested or accepted payment for his services.  Also according to Allstate, the files may reveal the identities of others who witnessed Mr. Lopez's injuries, who were treated by defendant, or were aware of defendant's chiropractic services.  Because the dispute at issue in this action involves the nature of defendant's services and the conduct that led to Mr. Lopez's death, the requested information is likely lead to the discovery of admissible evidence.[5]  Absent a showing of undue burden or that the subpoenaed information is privileged or protected, Mrs. Lopez cannot withhold relevant subpoenaed information.[6]  *See generally* Fed. R. Civ. P. 45.

Regardless of the documents' relevance, however, a court "must" quash or modify a subpoena that requires disclosure of privileged or other protected matter if no exception or waiver applies.  Fed. R. Civ. P. 45(c)(3)(A)(iii).  Here, Mrs. Lopez's attorney client privilege argument fails because the subpoena specifically excludes privileged documents from its scope.  *See* Lau. Decl., Ex. A.  With regard to the work product doctrine, Rule 26(b)(3) provides that

////

---

[5]  Allstate also notes that defendant's Initial Disclosures identify as relevant documents "the files and contents of Attorney Hank Greenblatt" and "the entire correspondence between Mr. Greenblatt and Allstate," and identify "Attorney Hank Greenblatt" as a witness with information pertinent to the disputed issues in the case.

[6]  Additionally, although Mrs. Lopez argues that the information requested by the subpoena which is not protected by the attorney client privilege and the work product doctrine need not be produced because it is equally available to all parties, Mrs. Lopez does not know what is or is not available to Allstate.

"Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . [b]ut, subject to Rule 26(b)(4), those materials may be discovered if: (I) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3). Although Mrs. Lopez contends that many of the documents requested in the Greenblatt/Dreyer Babich subpoena are protected work product, without knowing what documents are in the file, the court cannot determine which specific documents, if any, are relevant. Additionally, because it is unclear whether Allstate will be able to depose Mrs. Lopez, the court cannot determine whether Allstate "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."

At the September 2, 2009 hearing, Allstate's counsel indicated that he would withdraw the Greenblatt/Dreyer Babich subpoena if he could depose Mrs. Lopez, and Mrs. Lopez's counsel indicated that he would be willing to assist Allstate's counsel in coordinating the deposition. Accordingly, counsel shall confer to arrange for the deposition of Mrs. Lopez within five days of this order.[7] If agreement is reached within those five days, Allstate's motion to compel Greenblatt/Dreyer Babich to respond to the subpoena shall be deemed withdrawn. However, if the parties are unable to arrange for the deposition within five days, Allstate's motion to compel is granted, and Mr. Greenblatt and/or the Dreyer Babich firm shall provide all relevant, non-privileged, non-work product responsive documents within twenty days of this order. With regard to documents Mr. Greenblatt and/or the Dreyer Babich firm deems protected by privilege or work product, they shall "(I) expressly make the claim, and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that . . . will

////

---

[7] The actual deposition need not be held within five days; the parties need only *arrange* for the deposition within five days.

10

1   enable the parties to assess the claim."[8]  Fed. R. Civ. P. 45(d)(2)(A).[9]  In light of this ruling, Mrs.

2   Lopez's motion to quash the Greenblatt/Dreyer Babich subpoena, and Mrs. Lopez's related

3   request for sanctions, are denied.

4   III.   <u>CONCLUSION</u>

5         For the foregoing reasons, IT IS HEREBY ORDERED that:

6         1.  Blanca Lopez's motion to quash the U.C. Davis subpoena, Dckt. No. 10, is granted in

7   part, as discussed above.

8         2.  Allstate's motion to compel the U.C. Davis Medical Center to respond to the current

9   U.C. Davis subpoena, Dckt. No. 21, is denied.

10         3.  Blanca Lopez's motion to quash the Greenblatt/Dreyer Babich subpoena, Dckt. No.

11   12, is denied.

12         4.  If the parties are able to arrange for the deposition of Mrs. Lopez within five days of

13   this order, Allstate's motion to compel Mr. Greenblatt and/or the Dreyer Babich firm to respond

14   to the subpoena Greenblatt/Dreyer Babich shall be deemed withdrawn.  If the parties are unable

15   to arrange for the deposition within five days, however, Allstate's motion to compel is granted,

16   and Mr. Greenblatt and/or the Dreyer Babich firm shall provide all relevant, non-privileged, non-

17   work product responsive documents, and an appropriate privilege log, as discussed above, within

18   _____

19         [8]  Allstate argues that because a privilege log was not provided, as mandated by Rule 45,
any work product protection over the subpoenaed documents has been waived.  *See* Fed. R. Civ.

20   P. 45(d)(2)(A) ("A person withholding subpoenaed information under a claim that it is privileged
or subject to protection as trial-preparation material must: (I) expressly make the claim; and

21   (ii) describe the nature of the withheld documents, communications, or tangible things in a
manner that, without revealing information itself privileged or protected, will enable the parties

22   to assess the claim.").  However, Mrs. Lopez and Greenblatt/Dreyer Babich objected to the
subpoena and Mrs. Lopez moved to quash it.  Such objections excuse compliance with the acts

23   directed in the subpoena until a court orders compliance.  Fed. R. Civ. P. 45(c)(2)(B)(ii).

24         [9]  Mrs. Lopez contends that Rule 45 does not require a privilege log.  However, Rule 45
provides that a witness who withholds information on a claim of privilege or other protection

25   must state the claim expressly and support it with sufficient documentation to enable the
demanding party to assess the claim.  Fed. R. Civ. P. 45(d)(2)(A); *see also* The Rutter Group,

26   *Federal Civil Procedure Before Trial*, § 11:2294 ("This effectively requires the responding party
to prepare a 'privilege log' as to each document not produced.").

1  twenty days of this order.

2      5.  Blanca Lopez's requests for sanctions are denied.

3      SO ORDERED.

4  DATED:  September 24, 2009.

   EDMUND F. BRENNAN
   UNITED STATES MAGISTRATE JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26